UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TUAN VAN TRAN,

                    Petitioner,

          v.

TODD BLANCHE, *et al*.,

                    Respondents.

CASE NO. 2:26-cv-01782-GJL

ORDER GRANTING IN PART
PETITION FOR WRIT OF HABEAS
CORPUS

Petitioner Tuan Van Tran, a native and citizen of Vietnam, is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 1. On May 22, 2026, Petitioner, through counsel, filed a Petition for writ of habeas corpus under 28 U.S.C. § 2241, seeking immediate release from immigration detention and injunctive relief concerning the manner by which he may be re-detained and the government's ability remove him to a country other than Vietnam (*i.e.* "third-country removal"). *Id.*

Respondents to the Petition include Todd Blanche (Acting United States Attorney General), Markwayne Mullen (Secretary of the Department of Homeland Security ("DHS")),

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 1

Laura Hermosillo (Field Office Director for ICE Enforcement and Removal Operations ("ERO") in Seattle, Washington), Bruce Scott (NWIPC Warden), and ICE (collectively "Respondents").[1] The Petition has been fully briefed. Dkts. 1, 6, 9.

Having considered the parties' submissions, the balance of the record, and the governing law, the Court **GRANTS** the Petition (Dkt. 1) **IN PART** and **ORDERS** Petitioner's immediate release and permanent injunctive relief as set forth in the conclusion below.

## I.    FACTUAL BACKGROUND

Petitioner Tuan Van Tran, a citizen of Vietnam, entered the United States without lawful status in 1997. Dkt. 1 at 4; Dkt. 7 at 1; Dkt. 8-4. Petitioner was arrested upon entry to the United States and thereafter remained in custody until his final order of removal to Vietnam issued in March 1998. Dkt. 1 at 4; Dkt. 7 at 2–3; Dkt. 8-1. Petitioner was then released on an Order of Supervision ("OSUP") in August 1998. Dkt. 7 at 3; Dkt. 8-2.

On July 23, 2025, almost three decades after his release and receipt of a final order of removal, Petitioner was re-detained at an annual check-in with immigration officials. Dkt. 1 at 4; Dkt. 7 at 4; Dkt. 8-4. Since his re-detention, Petitioner alleges he has cooperated in efforts to obtain a travel document from Vietnam. Dkt. 1 at 5. No such travel document has been issued. *Id.*; Dkt. 7. Petitioner remains detained at NWIPC. *Id.*

## II.    PROCEDURAL BACKGROUND

These federal habeas proceedings were initiated on May 22, 2026, when Petitioner filed his Petition and supporting evidence. Dkts. 1, 1-1 through 1-7. As relief, Petitioner requests, among other things, immediate release from confinement and an injunction placing limitations on the Government's ability to remove him to a country other than Vietnam. Dkt. 1 at 29.

---

[1] The parties have consented to proceed in this matter before a United States Magistrate Judge. Dkt. 4.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 2

Respondents filed their Return on June 9, 2026, arguing the Petition and all requests for relief therein should be denied. Dkt. 6. Respondents also submitted evidence in support of their arguments in the Return. Dkts. 7, 8, 8-1 through 8-6. On June 15, 2026, Petitioner filed a Traverse in support of his Petition. Dkt. 9.

Upon review of the parties' submissions and the governing law, the Court **GRANTS** the Petition **IN PART** and **ORDERS** Petitioner's immediate release and injunctive relief outlined in the conclusion below.

### III.    DISCUSSION

Petitioner asserts the following six Grounds for relief in the Petition. In Ground One, Petitioner contends his removal is not likely to occur in the reasonably foreseeable future, making his detention of indefinite duration in violation of due process as set forth in *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Dkt. 1 at 21. In Grounds Two through Four, Petitioner asserts his re-detention and continued detention violates procedural and substantive due process for various reasons. *Id.* at 21–26. In Ground Five, Petitioners asserts his third-country removal, if conducted without notice and an opportunity to be heard, violates federal immigration statutes including the INA and the Convention Against Torture ("CAT"), the Administrative Procedure Act ("APA"), and the Due Process Clause. *Id.* at 26–27. Finally, in Ground Six, Petitioner asserts his removal to an undesignated third country where he is likely to be imprisoned or harmed ("punitive third-country removal") would violate constitutional guarantees against unlawful punishment. *Id.* at 27–28.

Respondents argue the Petition should be denied on all Grounds. Dkt. 6. In particular, Respondents argue Ground One should be denied because ERO has taken steps toward requesting travel documents for Petitioner's removal to Vietnam and because "Vietnam has

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 3

recently been issuing travel documents and effectuating removals for Vietnamese nationals." *Id.* at 7. With respect to Grounds Two, Three, and Four, Respondents argue that Petitioner received adequate process with respect to his re-detention because immigration officials "substantially satisfied" some of the required regulatory processes for re-detention. *Id.* at 9 (citing C.F.R. §§ 241.13(i)(3), 241.4(l) and alleging substantial satisfaction of notice requirement, but not addressing individual interview requirement). As for Grounds Five and Six, Respondents argue that any claim for relief related to third-country removal is unripe and that Petitioner's contentions regarding punitive third-country removal are without merit. *Id.* at 10–11.

As discussed in greater detail below, the Court finds that Petitioner's detention pending removal is of indefinite duration as alleged in Ground One and grant federal habeas relief on that basis. Because the appropriate remedy for Ground One is immediate release, the Court declines to reach Petitioner's re-detention claims in Grounds Two, Three, and Four and denies any corresponding request to enjoin his future re-detention.

With respect to Petitioner's third-country removal claims in Grounds Five and Six, the Court concludes that Petitioner is entitled to an injunction requiring notice and the right to respond in reopened removal proceedings before he may be removed to a country other than Vietnam. Finally, the Court further concludes that Petitioner is also entitled to injunctive relief prohibiting his removal to an undesignated third country where he is likely to be imprisoned or harmed.

**A.      Indefinite Detention (Ground One)**

In Ground One, Petitioner challenges the constitutionality of his detention pursuant to 8 U.S.C. § 1231, which takes effect once a final order of removal has been entered by an IJ.

The first ninety-day period following the entry of a final removal order is known as the "removal period." 8 U.S.C. § 1231(a)(1)(A). To ensure a noncitizen's presence for removal and to protect the community from dangerous noncitizens who are awaiting removal, the INA mandates detention during the removal period. *See* 8 U.S.C. § 1231(a)(2) ("During the removal period, the [DHS Secretary] **shall** detain the [noncitizen].") (emphasis added). Once a ninety-day removal period has expired, as occurred in this case, detention of unremoved noncitizens is no longer mandatory; instead, continued detention is committed to the discretion of the DHS Secretary. 8 U.S.C. § 1231(a)(6).

There is no textual limit on the DHS Secretary's discretion to detain certain noncitizens beyond the initial ninety-day removal period. However, in *Zadvydas*, the Supreme Court interpreted the INA to authorize the detention of noncitizens subject to removal orders only for a period "reasonably necessary to secure [their] removal." 533 U.S. at 699. By interpreting the INA in this way, the Supreme Court avoided a "serious constitutional threat" posed by granting the discretionary authority to order noncitizens detained for indefinite durations. *Id*.

Under *Zadvydas*, an order of detention during the first six months after entry of a final removal order is presumptively reasonable. *Id.* at 701. After the presumptively reasonable 180-day window has elapsed, courts apply a burden-shifting framework to determine whether a noncitizen's detention is of an indefinite duration in violation of the INA and due process. *Id.*

Within this framework, the noncitizen carries the initial burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* The "good reason to believe" standard "does not place a burden upon the detainee to demonstrate [there is] no reasonably foreseeable, significant likelihood of removal or show that his detention is indefinite; it is something less than that." *Senor v. Barr*, 401 F. Supp. 3d 420, 430

(W.D.N.Y. 2019) (cleaned up). If the noncitizen provides good reason, the burden then shifts to the government to show removal remains likely within a reasonable timeframe. *Id*. If the government fails to submit sufficient rebuttal evidence showing that removal is likely to occur within the reasonably foreseeable future, then the noncitizen is entitled to habeas corpus relief. *Id.*

Here, a final order of removal was issued against Petitioner in 1998, and there is no dispute that Petitioner's detention has now extended beyond the presumptively reasonable period. *See* Dkt. 6 at 7 (acknowledging that Petitioner's detention has extended beyond six months). Thus, the Court analyzes Petitioner's indefinite detention claim under *Zadvydas*'s burden-shifting framework wherein Petitioner bears the initial burden of providing good reason to believe there is no significant likelihood of his removal in the reasonably foreseeable future.

1.      Petitioner Provides Good Reason to Question the Likelihood of his Removal in the Reasonably Foreseeable Future

Petitioner contends there is good reason to believe his removal will not occur within a reasonable timeframe because, despite having a final order of removal since 1998 and being detained since July of last year, there is no indication a travel document from Vietnam is forthcoming. The Court agrees. *See, e.g.*, *Haidari v. Bondi*, No. 2:26-cv-00237-JHC, 2026 WL 395683, at *2 (W.D. Wash. Feb. 12, 2026) (finding good reason to believe removal was not foreseeable and granting habeas relief where, after nine months in immigration detention, the country designated for removal had neither agreed to accept the petitioner nor issued travel documents). Accordingly, the burden shifts to Respondents to rebut Petitioner's showing with evidence.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 6

2.      Respondents Fail to Show Petitioner's Removal is Likely to Occur in the Reasonably Foreseeable Future

Respondents have not met their burden of rebutting Petitioner's showing that there is no significant likelihood of removal in the reasonably foreseeable future. Although Respondents have demonstrated that ERO has reviewed Petitioner's case and taken certain internal steps to begin the process of requesting travel documents for him, they present no sufficiently concrete or individualized evidence demonstrating that Petitioner's removal is, in fact, significantly likely to occur within the reasonably foreseeable future. And any argument to the contrary simply ignores the plain fact that Respondents have failed to make any meaningful progress for the nearly 12 months that Petitioner has been detained.

Specifically, the evidentiary record establishes that ERO submitted an internal request *to request* a travel document to ERO Headquarters on January 5, 2026. Dkt. 7 at 4. That is, Respondents do not contend that a travel document request has been tendered to the Vietnamese Government, they assert *only* that a request to do so has been pending before ERO Headquarters since January 2026. *See id.* at 5 ("Petitioner…filled out a translated travel document request that *will* be submitted to the Vietnamese Consulate *once* ERO headquarters approves." (emphasis added)) at 4 ("Petitioner's travel document request *is still pending approval from headquarters*." (emphasis added)). Moreover, this internal request for permission to submit a travel document request was made nearly six months after Petitioner was re-detained. And, while Respondents contend Petitioner's re-detention occurred after "ERO determined…[there was] a significant likelihood of removal in the reasonably foreseeable future," Dkt. 7 at 4, Respondents submit no individualized evidence demonstrating the basis on which that determination was made. *See also* Dkt. 8-4 (noting this determination was "per ERO headquarters guidance" and without noting

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 7

any individualized circumstances supporting the determination as to the likelihood of Petitioner's removal).

Furthermore, Respondents acknowledge that Vietnam is a country with "historically difficult travel document processes." Dkt. 6 at 6. Yet Respondents submit no evidence regarding the anticipated timeline for when a travel document will be requested from Vietnam or how long it will take for Petitioner's travel document to issue once requested. Likewise, Respondents do not identify any affirmative action by the Vietnamese government indicating that it has agreed to accept *Petitioner* for removal or that it is reasonably likely to do so. Respondents' general assertions that removals to Vietnam have occurred in other unspecified instances where travel documents have been issued have little, if any, value in demonstrating the likelihood of Petitioner's removal, especially given that no travel document request has been made let alone issued in his case.

Faced with similarly deficient records, "[c]ourts in this circuit have regularly refused to find Respondents' burden met where Respondents have offered little more than generalizations regarding the likelihood that removal will occur." *Nguyen v. Scott*, 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025) (collecting cases). This Court, too, finds that Respondents fail to make the requisite showing.

In sum, the Court concludes that Petitioner has established good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. The burden therefore shifts to Respondents to rebut that showing with evidence sufficient to demonstrate that Petitioner's removal is significantly likely to occur in the reasonably foreseeable future. Respondents have failed to do so. The continued absence of travel documents, the lack of evidence regarding the status or expected completion of the travel document process,

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 8

Respondents' acknowledgment of Vietnam's historically difficult travel document procedures, and the prolonged inability to execute Petitioner's final order of removal—or to even *request* a travel document to that end—demonstrates that Petitioner's detention is of an indefinite duration.

Accordingly, Petitioner's continued detention under 8 U.S.C. § 1231(a)(6), as construed in *Zadvydas*, is no longer authorized and runs afoul of due process.

       3.     <u>Immediate Release from Detention is the Appropriate Relief for Ground One</u>

Having determined that Petitioner's continued detention is no longer authorized, the Court must determine the proper scope of habeas relief. Federal courts have authority to grant writs of habeas corpus to individuals in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). The Supreme Court in *Zadvydas* considered conditional release the appropriate remedy once detention exceeds the period reasonably necessary to effectuate removal. 533 U.S. at 699–700.

Accordingly, the Court concludes that the appropriate relief for the unlawful detention alleged in Ground One is an order directing Respondents to release Petitioner from immigration detention under reasonable conditions of supervision.

**B.    Re-Detention Clams (Grounds Two, Three, and Four)**

In Grounds Two, Three, and Four, Petitioner alleges his re-detention and continued detention violate procedural and substantive due process. Dkt. 1 at 21–26. Because the injuries alleged in these Grounds are remedied by the Court's grant of immediate release on Ground One and because disposition of additional constitutional claims would not materially alter the outcome of this case, the Court declines to reach Petitioner's re-detention claims in Grounds Two, Three, and Four. *Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 347 (1936)

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 9

(explaining that courts should avoid resolving a constitutional question "unless absolutely necessary to a decision of the case") (internal citations and quotations omitted).

Furthermore, to the extent Petitioner also seeks to enjoin any future re-detention decision in these Grounds, such a broad request is not supported. *See* Dkt. 1 at 29. While the Court concurs with Petitioner that Respondents must comport with due process when exercising their detention authority, the Court declines to conclusively resolve what process may be due to Petitioner in all circumstances preceding a future re-detention, nor will the Court prescribe a comprehensive procedural framework for any potential re-detention decision Petitioner may face.

**C.    Third-Country Removal (Grounds Five and Six)**

In his remaining Grounds for relief, Petitioner invokes the Court's habeas and federal question jurisdiction to request injunctive relief concerning third-country removal. Dkt. 1 at 26–29. As these Grounds are not remedied by his immediate release from detention and the requested injunctive relief is within this Court's jurisdiction to grant, the Court addresses each Ground in turn. *See generally Schlup v. Delo*, 513 U.S. 298, 319 (1995) (habeas corpus relief is "at its core, an equitable remedy"); *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) ("[I]mmediate physical release [is not] the only remedy under the federal writ of habeas corpus.").

Specifically, in Grounds Five and Six, Petitioner requests that Respondents be enjoined from removing Petitioner to a third country without notice and a meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings (Ground Five) and also from removing Petitioner to any third country where he is likely to face imprisonment or other punishment upon arrival (Ground Six). Dkt. 1 at 26–29.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 10

1.    Third-Country Removal (Ground Five)

With respect to Ground Five, the Court finds that Petitioner is entitled to injunctive relief enjoining Respondents from removing Petitioner to a third country without notice and a meaningful opportunity to respond.

"A number of courts in this district have recently addressed challenges to ICE's current third-country removal policy and have concluded that the policy violates due process." *Machuca Del Cid v. Mullin*, No. C26-1271-SKV, 2026 WL 1295891, at *5 (W.D. Wash. May 12, 2026) (citing *Baltodano v. Bondi*, No. C25-1958-RSL, 2025 WL 3484769, at *6 (W.D. Wash. Dec. 4, 2025), and *Abubaka v. Bondi*, No. C25-1889-RSL, 2025 WL 3204369, at *6 (W.D. Wash. Nov. 17, 2025), and *Nguyen v. Scott*, 796 F. Supp. 3d 703, 727–29 (W.D. Wash. 2025)). Given the speed at which third-country removal can be executed once the decision to pursue such removal under this policy is made, these courts also find requests for injunctive relief ripe for adjudication even without evidence of the Government's active efforts to pursue third-county removal of the noncitizen. *Id.*; *see also Le v. Bondi*, No. 25-cv-2454-KKE, 2026 WL 309239, at *7 (W.D. Wash. Feb. 5, 2026) (noting that, under the current policy, a noncitizen "could be put on a plane without being told where he is going and would never have the chance to express a reasonable fear of persecution or torture or seek judicial intervention"); Dkt. 1-4 (DHS Guidance on Third-Country Removals dated July 9, 2025).

Thus, where, as here, the Government does not dispute a noncitizen is subject to the current third-country removal policy, an order enjoining execution of that policy is appropriate. *Savinsky v. Bondi*, No. 2:26-CV-00835-TL, 2026 WL 1191017, at *11 (W.D. Wash. May 1, 2026) (granting relief and rejecting the Government's argument that "[t]here is no indication at this time that ICE is seeking to remove Petitioner to a third country."); *see also Kumar v. Wamsley*, No. 25-cv-2055-KKE, 2025 WL 3204724, at *7 (W.D. Wash. Nov. 17, 2025) ("Where

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 11

alleged harm 'is directly traceable to a written policy …there is an implicit likelihood of its repetition in the immediate future.'") (quoting *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 986 (9th Cir. 2007)); *but see Edin v. Blanche*, No. C26-1208-MLP, 2026 WL 1256141, at *6 (W.D. Wash. May 7, 2026) (denying request for injunctive relief as unripe absent individualized evidence suggesting petitioner's removal to third country is imminent).

Accordingly, should Respondents take steps to remove Petitioner to a country other than Vietnam, they must provide Petitioner with written notice of their intent to do so and a meaningful opportunity to respond in reopened removal proceedings before an immigration judge under 8 U.S.C. § 1231(b)(3). *See, e.g., Nguyen v. Scott,* 796 F. Supp. 3d 703, 739 (W.D. Wash. 2025) (requiring that noncitizen be granted opportunity to challenge third-country removal in reopened removal proceedings).

2.    Punitive Third-Country Removal (Ground Six)

With respect to Ground Six, the Court finds that Petitioner is entitled to injunctive relief enjoining Respondents from removing him to a third country where he is likely to face imprisonment or other punishment upon arrival.

Petitioner alleges his removal to a third country where he is likely to be imprisoned or harmed constitutes unlawful punishment in violation of the United States Constitution. Dkt. 1 at 27–28 (citing *Wong Wing v. United States*, 163 U.S. 228, 236–38 (1896)). Courts in this District have recently granted relief on similar claims, holding that such punitive enforcement of the Government's third-country removal policy is unconstitutional under *Wong Wing. See Nguyen v. Hermosillo*, No. 2:26-CV-00335-GJL, 2026 WL 538497, at *8 (W.D. Wash. Feb. 26, 2026); *Baltodano v. Bondi*, 815 F. Supp. 3d 1191, 1201–05 (W.D. Wash. Dec. 4, 2025); *Abubaka v. Bondi*, No. 25-cv-1889RSL, 2025 WL 3204369, at *7–8 (W.D. Wash. Nov. 17, 2025); *Nguyen*, 796 F. Supp. 3d at 732–35; *c.f. Somsanuk v. Bondi*, No. 26-CV-48-MLP, 2026 WL 221139, at *6

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 12

(W.D. Wash. Jan. 28, 2026) (denying injunction categorically prohibiting removal to "*any* third country," concluding such a claim was overbroad (emphasis added)).

In finding the risk of punitive enforcement to be nonspeculative, courts have taken judicial notice of "statements made by government officials, both on social media and to the press, acknowledging that deportees to third countries are being imprisoned and expressing intent to continue that practice." *Baltodano*, 815 F. Supp. 3d at 1202 (quoting *Nguyen*, 796 F. Supp. 3d at 733–34). The court in *Nguyen* also noted that "[o]ther courts across the country have recognized that the [G]overnment is intentionally removing individuals to countries where they will be imprisoned." *Nguyen*, 796 F. Supp. 3d at 734 (citations omitted).

The courts in *Baltodano* and in *Abubaka*, relying heavily on the *Nguyen* reasoning, concluded that Respondents' "practice of third-country removal paired with imprisonment is intended to be punitive and thus violates due process under *Wong Wing* and *Zadvydas*." *Baltodano*, 815 F. Supp. 3d at 1203 (cleaned up); *Abubaka*, 2025 WL 3204369, at *8.

In line with this District's authority, this Court similarly concludes that Respondents' documented practice of third-country removals paired with imprisonment violates due process. Petitioner is therefore entitled to the requested order that Respondents not remove him to a third country where he is likely to face imprisonment or other punishment upon arrival.

### IV.    CONCLUSION

Based on the foregoing, the Court **GRANTS** the Petition for writ of habeas corpus (Dkt. 1) and **GRANTS IN PART** Petitioner's request for a permanent injunction. The Court **ORDERS** as follows:

(1)    Respondents **SHALL** immediately release Petitioner Tuan Van Tran from custody on reasonable conditions of supervision, if any;

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 13

(2)    Respondents **SHALL** file a declaration with the Court within **twenty-four hours** of this Order, confirming that Petitioner has been released from immigration detention and providing the date and time of his release;

(3)    Respondents **SHALL NOT** remove Petitioner to a country other than the country designated in his Order of Removal without first providing him with written notice and a meaningful opportunity to respond in a reopened removal proceeding before an immigration judge; and

(4)    Respondents **SHALL NOT** remove Petitioner to any third country where he is likely to face imprisonment or other punishment upon arrival.

Finally, the Court will entertain any timely post-judgment request for attorney's fees. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 10th day of July, 2026.

Grady J. Leupold
United States Magistrate Judge

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 14